ALBERT GEMMA AND MARIE (MARIA) GEMMA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91379. Filed September 29, 1966.

*Eustace T. Pliakas*, for the petitioners.
*Albert R. Doyle*, for the respondent.

Bruce, *Judge:* Respondent determined deficiencies in income tax, additions to tax provided by section 6653(b), I.R.C. 1954, for fraud, additions to tax under section 6654 thereof for failure to pay an estimated income tax for the calendar years 1955, 1956, and 1957, and an addition to tax under section 294(d)(1)(A), I.R.C. 1939, for failure to file a timely declaration of estimated tax for 1954, as follows:

| Year | Deficiency | Additions to tax | | |
| | | I.R.C. 1939 | I.R.C. 1954 | |
| | | Sec. 294(d) (1)(A) | Sec. 6654 | Sec. 6653(b) |
| 1954 | $14,579.57 | $1,338.62 | | $7,289.79 |
| 1955 | 14,665.29 | | $407.10 | 7,332.65 |
| 1956 | 29,014.72 | | 808.88 | 14,507.36 |
| 1957 | 21,822.12 | | 607.04 | 10,911.06 |

The issues for decision are whether the respondent's reconstruction of Albert Gemma's income for the taxable years is correct and whether the petitioners are liable for additions to tax for fraud for each of the taxable years.

FINDINGS OF FACT

The petitioners are husband and wife. They reside in Providence, R.I., and resided in that city in the calendar years 1946 through 1957. They did not file any Federal income tax returns for the years 1954 through 1957. Since the transactions involving the income herein were carried out by Albert Gemma, he will be referred to herein as the petitioner.

During the years 1954 through 1957 petitioner was self-employed as a builder and contractor.

The petitioners also did not file timely Federal income tax returns for any of the years 1946 through 1953. After an investigation by respondent's agents the petitioners signed joint returns prepared by the agents, which returns were filed with the district director of internal revenue at Providence in May 1954. Additions to tax for delinquency and for failure to file declarations of estimated tax were assessed. The liabilities determined, plus interest, were paid, according to the district director's records, at various times in 1954 and 1955 ending with April 18, 1955, after liens had been filed.

In 1954 the respondent's agents investigating the liabilities of the petitioners for income taxes for the years 1946 through 1953 found that Gemma's records were inadequate for the preparation of income tax returns. The agents determined petitioners' income for those years by the net worth method from public records and records of other parties. Gemma's income in those years was derived principally from the construction business, including the sale of houses. The agents informed him of his obligations for filing returns and for keeping adequate books and records.

The returns for the years 1946 through 1953 prepared by respondent's agents showed the following amounts of tax and additions to tax:

| Year | Income tax | Additions to tax |
| --- | --- | --- |
| 1946 | $1,738.13 | $434.53 |
| 1947 | 1,738.13 | 434.53 |
| 1948 | 1,180.02 | 295.01 |
| 1949 | 1,276.82 | 319.21 |
| 1950 | 1,329.70 | 332.43 |
| 1951 | 1,606.04 | 658.48 |
| 1952 | 1,870.68 | 766.98 |
| 1953 | 1,870.68 | 579.91 |

The district director's records as of September 14, 1959, showed no record of the filing of returns or declarations of estimated tax for the petitioners or either of them for 1954, 1955, 1956, 1957, or 1958. In October 1960 jeopardy assessments were made of deficiencies determined for 1954, 1955, 1956, and 1957.

Petitioner maintained no formal books of account for the years 1946 through 1957. For the years 1954 through 1957 there were no general journals or other books of original entry. His business records consisted of canceled checks, check stubs bearing some notations concerning the purpose of the checks, bills, and settlement records made in connection with the closing of sales of houses.

On January 1, 1954, petitioner owned land, materials, and supplies having a cost basis as follows:

| | |
| --- | --- |
| 94 Bellevue Ave., North Providence | $8,000 |
| Land | 23,435 |
| Materials and supplies | 500 |
| Total | 31,935 |

In 1954 petitioner acquired four parcels of real property at a total cost of $44,543. In 1955 he acquired two parcels at a cost of $7,850. In 1956 he acquired two parcels at a cost of $7,468.87. In 1957 he acquired one parcel at a cost of $17,350.

Petitioner is entitled to deductions for depreciation in the following amounts:

| | |
|---|---|
| 1954 | $1, 449. 45 |
| 1955 | 1, 339. 95 |
| 1956 | 1, 339. 95 |
| 1957 | 1, 130. 85 |

Petitioner acquired a tract of land at South Attleboro, Mass., herein referred to as Oakland Plat, in April 1954, at a cost of $29,500 to be paid on a deferred basis as lots were sold. Petitioner made site improvements and subdivided the tract into 76 house lots.

Petitioner was the grantor of record of various parcels of real property located in Providence, North Providence, Johnston, or Warwick, R.I., or in Oakland Plat, during the taxable years 1954 through 1957. The sales of these parcels, referred to herein as documented sales, were in the following amounts:

| | Total sales, including Oakland Plat | | Oakland Plat sales | |
|---|---|---|---|---|
| Year | Number | Total price | Number | Price |
| 1954 | 11 | $82, 196. 49 | 6 | $46, 416. 55 |
| 1955 | 14 | 187, 928. 99 | 11 | 145, 125. 18 |
| 1956 | 17 | 170, 144. 91 | 9 | 113, 540. 80 |
| 1957 | 19 | 204, 582. 79 | 13 | 160, 482. 79 |

In connection with the documented sales petitioner took second mortgages on certain of the properties in amounts as follows:

| Year | Second mortgages | Amount |
|---|---|---|
| 1954 | 1 | $1, 834 |
| 1955 | 5 | 13, 200 |
| 1956 | 3 | 7, 400 |
| 1957 | 5 | 14, 200 |

The documented sales included contract work performed by petitioner on certain houses amounting to $6,000 in 1956 and $4,900 in 1957.

Petitioner maintained checking accounts with Citizens Trust Co., and Plantations Bank of Rhode Island, both in Providence, herein referred to as Citizens and Plantations, respectively. The total deposits to these accounts in the years 1954 through 1957 were in the following amounts:

| Year | Plantations | Citizens |
|------|------------|----------|
| 1954 | $108, 691. 33 | $5, 647. 04 |
| 1955 | 106, 701. 82 | 220. 00 |
| 1956 | 57, 601. 59 | 12, 808. 16 |
| 1957 | 44, 883. 84 | 11, 862. 76 |

Norman Builders, Inc., was incorporated on May 26, 1954, under the laws of Rhode Island. The stockholders were Norman A. Gauthier and Mary T. Gauthier, his wife. The corporation engaged in the construction of houses in Oakland Plat under arrangements with the petitioner. On June 6, 1957, the corporation was petitioned into receivership in the Superior Court for the County of Providence on grounds of insolvency. A final decree was entered in the receivership proceeding on June 25, 1958. The receivers, with approval of the Superior Court, sold the corporation's interest in three unfinished houses in Oakland Plat to Albert Gemma for $2,000 on September 12, 1957.

House Beautiful, Inc., was incorporated on May 7, 1956, under the laws of Rhode Island. The stockholders were Frank F. Gallo and Antonio M. Lasini. Gemma was an officer for a short time. The corporation engaged in the construction of houses in Oakland Plat under arrangements with the petitioner. On July 19, 1957, this corporation was petitioned into receivership in the Superior Court for the County of Providence on grounds of insolvency.

The records of House Beautiful, Inc., showed sales of 14 houses for a total price of $165,150, and 4 houses unsold by October 1957, on which mortages amounting to $24,000 had been obtained. A total of $147,816.98 had been deposited to that corporation's bank account. Of this, $6,247.17 was paid by checks to petitioner. The records did not show what other amounts had been paid to petitioner. An amount of $41,333.02 was not accounted for.

On April 4, 1955, petitioners borrowed $4,000 from Alfred Gemma, brother of petitioner Albert. The proceeds were deposited in the Plantations account.

On April 6, 1955, petitioners refinanced the first mortage on their home to $9,000. Part of the proceeds were used to pay back taxes of $729.49 on the residence. On the same date they borrowed $1,000 from Industrial National Bank and received net proceeds of $987.36 after deduction of interest. The net proceeds were deposited in the Plantations account on November 15, 1955.

On April 15, 1955, petitioners borrowed $10,000 from Industrial National Bank on a note guaranteed by Henry Gemma, another brother of petitioner Albert. The proceeds were deposited in the Plantations account.

The Roger Williams Savings & Loan Association, of Providence, made construction loans to petitioner for the erection of houses on the lots in Oakland Plat, and, as these houses were sold, provided purchase-money mortgages for the buyers.

All funds obtained from the Roger Williams Savings & Loan Association on construction mortgage loans in the name of Albert Gemma, as mortgagor, were paid by the lender directly to petitioner or to persons designated by him.

Petitioner issued checks to persons to be paid in connection with work on Oakland Plat or other jobs. Many checks were endorsed back by the payee and deposited in the petitioner's bank accounts. Checks endorsed and redeposited amounted to the following:

| Year | Total |
|------|-------|
| 1954 | $42, 098. 18 |
| 1955 | 5, 838. 05 |
| 1956 | 1, 063. 78 |
| 1957 | 1, 465. 50 |

Mutual Realty Co., Inc., is a corporation wholly owned by Albert Gemma. It is owner of three or four apartment buildings. Its income consists almost entirely of rents. Petitioner employed an accountant who prepared tax returns for this corporation for the fiscal years ending August 31, 1954 through 1957. A rent book was maintained from which the rental income was computed. A checking account was maintained for the corporation. The accountant found that not all the rents were deposited to this account, and recorded the difference between the rents collected and rents deposited as loans to petitioner. The amounts so recorded were:

| FYE Aug. 31— | Amount |
|------|-------|
| 1955 | $4, 683. 00 |
| 1956 | 2, 807. 43 |
| 1957 | 5, 660. 52 |

The respondent determined the closing inventory for each year by evaluating unsold houses petitioner had under construction according to the extent to which the construction loan had been advanced as shown by the records of the lender. Where a house was constructed without a loan, the valuation was based on the assessed valuation for tax purposes, reduced by 10 percent of the sales price to allow for the builder's profit.

Respondent reconstructed petitioner's business income from petitioner's checks, check stubs, and notations, and from public records, third party records, bank deposits, and tracing of specific items, as follows:

*1954*

| | | |
|---|---|---|
| Documented sales | | $82,196.49 |
| Other business deposits | | 47,766.14 |
| | | |
| Gross receipts from business | | 129,962.63 |
| Less: Cost of operations inventory, Jan. 1 | $31,935.00 | |
| Add: Costs paid from construction mortgage funds: | | |
| Paid to Norman Builders, Inc | $57,192.67 | |
| Paid to House Beautiful, Inc | 0 | |
| Construction mortgage expenses | 774.71 | 57,967.38 |
| | | |
| Costs paid from checking accounts: | | |
| Oakland Plat expenses | 9,194.08 | |
| All other construction costs | 26,220.55 | |
| Rental expenses | 414.90 | |
| Interest, taxes, and insurance | 961.01 | 36,790.54 |
| | | |
| Costs paid from sales proceeds: | | |
| Paid to Norman Builders, Inc | 5,182.15 | |
| Paid to House Beautiful, Inc | 0 | |
| Paid for closing costs | 220.42 | 5,402.57 |
| | | |
| Land and building acquisitions | 44,543.00 | |
| Depreciation allowed | 1,449.45 | |
| | | |
| Total | 178,087.94 | |
| Less: Inventory Dec. 31 | 89,878.74 | |
| | | |
| Total cost of operations | | 88,209.20 |
| | | |
| Business income | | 41,753.43 |

*1955*

| | | |
|---|---|---|
| Documented sales | | $187,883.99 |
| Other business deposits | | 27,537.82 |
| | | |
| Gross receipts from business | | 215,421.81 |
| Less: Cost of operations inventory, Jan. 1 | $89,878.74 | |
| Add: Costs paid from construction mortgage funds: | | |
| Paid to Norman Builders, Inc | $38,144.45 | |
| Paid to House Beautiful, Inc | 0 | |
| Construction mortgage expenses | 915.99 | 39,060.44 |
| | | |
| Costs paid from checking accounts: | | |
| Oakland Plat expenses | 7,595.97 | |
| All other construction costs | 46,796.98 | |
| Rental expenses | 197.03 | |
| Interest, taxes, and insurance | 1,221.06 | 55,811.04 |

Costs paid from sales proceeds:
    Paid to Norman Builders, Inc_____    $46, 081. 04
    Paid to House Beautiful, Inc_____    0
    Paid for closing costs_____    3, 053. 79    $49, 134. 83

Land and building acquisitions_____    7, 850.00
Depreciation allowed_____    1, 339. 95

    Total _____    243, 075. 00
Less: Inventory Dec. 31_____    71, 087. 64

    Total cost of operations_____    $171, 987. 36

Business income_____    43, 434. 45

### 1956

Documented sales_____    $170, 144. 91
Other business deposits_____    28, 565. 17

Gross receipts from business_____    198, 710. 08
Less: Cost of operations inventory, Jan. 1_____    $71, 087. 64
Add: Costs paid from construction mortgage funds:
    Paid to Norman Builders, Inc_____    $28, 764. 15
    Paid to House Beautiful, Inc_____    53, 934. 53
    Construction mortgage expenses_____    1, 836. 99    84, 535. 67

Costs paid from checking accounts:
    Oakland Plat expenses_____    5, 008. 80
    All other construction costs_____    40, 303. 18
    Rental expenses_____    274. 96
    Interest, taxes, and insurance_____    1, 516, 05    47, 102. 99

Costs paid from sales proceeds:
    Paid to Norman Builders, Inc_____    14, 825. 00
    Paid to House Beautiful, Inc_____    45, 632. 18
    Paid for closing costs_____    1, 575. 00    62, 032. 18

Land and building acquisitions_____    7, 468. 87
Depreciation allowed_____    1, 339. 95

    Total _____    273, 567. 30
Less: Inventory Dec. 31_____    141, 606. 77

    Total cost of operations_____    131, 960. 53

Business income_____    66, 749. 55

### 1957

Documented sales_____    $204, 582. 79
Other business deposits_____    37, 183. 36

Gross receipts from business_____    241, 766. 15
Less: Cost of operations inventory, Jan. 1_____    $141, 606. 77

Add: Costs paid from construction mortgage funds:

| | | |
|---|---|---|
| Paid to Norman Builders, Inc_____ | $10,969.42 | |
| Paid to House Beautiful, Inc_____ | 7,464.48 | |
| Construction mortgage expenses_____ | 862.14 | $19,296.04 |

Costs paid from checking accounts:

| | | |
|---|---|---|
| Oakland Plat expenses_____ | 1,202.02 | |
| All other construction costs_____ | 38,197.13 | |
| Rental expenses_____ | 120.65 | |
| Interest, taxes, and insurance_____ | 1,004.63 | 40,524.43 |

Costs paid from sales proceeds:

| | | |
|---|---|---|
| Paid to Norman Builders, Inc_____ | 4,565.83 | |
| Paid to House Beautiful, Inc_____ | 16,920.00 | |
| Paid for closing costs_____ | 2,727.14 | 24,212.97 |

| | | |
|---|---|---|
| Land and building acquisitions_____ | | 17,350.00 |
| Depreciation allowed_____ | | 1,130.85 |
| | | |
| Total _____ | | 244,121.06 |
| Less: Inventory Dec. 31_____ | | 56,943.62 |
| | | |
| Total cost of operations_____ | | $187,177.44 |
| | | |
| Business income_____ | | 54,588.71 |

In the foregoing reconstruction respondent computed "Other business deposits" as follows:

| | 1954 | 1955 | 1956 | 1957 |
|---|---|---|---|---|
| Total deposits_____ | $114,338.37 | $106,921.82 | $70,409.75 | $56,746.60 |
| Less: | | | | |
| Construction mortgage proceeds_____ | 5,538.00 | 33,264.72 | 1,800.00 | 3,363.68 |
| Other loans_____ | | 19,780.00 | 2,522.72 | 17.62 |
| Transfer of funds_____ | 5,200.00 | | | |
| Redeposits_____ | 3,981.96 | | | |
| Checks endorsed and redeposited_____ | 42,098.18 | 5,338.05 | 1,063.78 | 1,465.50 |
| Transfers to Mutual Realty Co_____ | 1,500.00 | 4,300.00 | 3,930.32 | 950.00 |
| Documented sales of real estate_____ | 8,254.09 | 16,201.23 | 32,527.76 | 13,766.44 |
| Total eliminations_____ | 66,572.23 | 79,384.00 | 41,844.58 | 19,563.24 |
| Other business deposits_____ | 47,766.14 | 27,537.82 | 28,565.17 | 37,183.36 |

Petitioner had two daughters. In the taxable years he financed one daughter's education at Finch College for 1 year at a cost of $1,500 to $1,700; purchased a sports car for one of them at a cost of some $1,500; paid for a wedding reception for one; financed for about $2,500 a trip to Europe for 8 months for one of them to study; and assisted the married daughter in buying a house.

In the taxable years petitioner went on hunting trips of 5 to 7 days and weekend ski trips.

A criminal information was filed with the U.S. District Court for the District of Rhode Island on January 3, 1962, alleging that the

petitioners willfully failed to file income tax returns for the taxable years 1955, 1956, and 1957. On April 19, 1963, petitioner Albert Gemma entered a plea of guilty to a charge of willful failure to file an income tax return for the taxable year 1956.

The following adjustments to taxable income are conceded by respondent on brief as nonincome items:

| Year | Source | Related exhibits | Amount |
|------|--------|------------------|--------|
| 1954 | Buonanno sale | 1-A #1, 10-J #54, 26, 27, 35 | $3,080.54 |
| 1954 | Russo sale | 1-A #3, 10-J #112, 24, 25 | 1,900.00 |
| 1955 | Vitullo loan | 11-K #61, 22, 23 | 3,880.00 |
| 1955 | Industrial National Bank loan proceeds | 11-K #147, 28 | 987.36 |

The following deposits should also be excluded from taxable income as nonincome items:

| Year | Source | Related exhibits | Amount |
|------|--------|------------------|--------|
| 1954 | McVey sale | 1-A #2, 10-J #66, 67, 32, 33 | $1,754 |
| | | | 500 |
| 1956 | Transfer of funds between banks | 16-P #26, 12-L #107, 108 | 2,000 |

Marie (Maria) Gemma had no taxable income in any of the years 1954 through 1957.

The failure of Albert Gemma to file a Federal income tax return for each of the years 1954 through 1957 was willful and was due to fraud. At least a part of the deficiency for each year was due to fraud.

OPINION

Albert Gemma was engaged for many years in the business of building houses, doing construction work under contract, and renting residence property. He filed no income tax returns and ignored the requirements of law concerning keeping proper books and records. When respondent's agents investigated his tax liability for the years 1946 through 1953 they informed him of his duty to keep records and file returns. He agreed to their computation of his income and signed the joint returns they prepared. But he continued to disregard the requirements of keeping books and records and filed no returns for the years 1954 through 1957.

Respondent's investigation of petitioner's income for the years 1954 through 1957 required a reconstruction of income from public records, third-party records, bank records, and petitioner's canceled checks and check stubs and various notes made by petitioner.

Petitioner's business involved the building and sale of houses. He had income also from rentals, second mortgages taken on the sales of houses, contract work, and from the earnings of a wholly owned corporation owning rental apartments.

Respondent's reconstruction was based upon an examination of specific items and bank deposits. As far as possible the calculation of income from the construction of houses was made upon the completed contract method of accounting, with costs related to the houses according to the year of sale. Since there were many deposits to petitioner's bank accounts which could not be related to such sales, the reconstruction also treated as income those bank deposits which could not be identified as nonincome items.

Petitioner contends that the income for the taxable years should be determined on a cash basis. His records did not clearly reflect income. Under section 446(b), I.R.C. 1954, respondent is authorized, where the taxpayer's method of accounting does not clearly reflect income, to make the computation of taxable income "under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." Respondent has used a combination of completed-contract method and analysis of bank deposits as most clearly reflecting petitioner's income. This is within the authority of section 446.

Petitioner says that he is a carpenter and painter; that his equipment in the taxable years was limited to one truck and some power-saws; that he had a crew of only two to four men who worked with him in building houses on speculation, making minor repairs under contract, and maintaining four buildings owned by his corporation, Mutual Realty Co., Inc.

Petitioner contends that in the documented sales of houses constructed in the Oakland Plat he was selling only the land; that the houses were built by the corporations, Norman Builders and House Beautiful; that petitioner did none of the building and his income was limited to the sale price of the lots, which ranged from $900 to $1,500 each, less his cost and less his expense of installing improvements.

Respondent points out that petitioner bought the Oakland Plat land, negotiated for construction loans which were in his name, made sales, handled the distribution of the money at the closing, and sometimes took second mortgages on the property sold; that there is no evidence of any written contract between him and either corporation; and that no stockholder or officer of either corporation testified in corroboration of petitioner and their failure to appear is not explained. There is no evidence of sales of lots to the corporations. Respondent concluded that the corporations may have been subcontractors performing construction work for the petitioner, who, in the settlements, realized the principal profit on the sales. Since respondent's determination allowed all proved costs and expenses, including the payments made to these corporations, petitioner is being charged only with the funds he retained. He has not shown that such retained funds were not income taxable to him.

Petitioner says that much of the money which was deposited in his bank accounts and checked out represented nonincome items such as deposits on houses, construction mortgage funds, and distributions on closings, which did not belong to him but passed through his accounts, multiplying the distortions sometimes produced by the bank-deposit-analysis method. He says that he was without sufficient skill to keep his own records and, as he believed, without enough money, or in any event without the inclination, to hire sufficient help, and that he undertook to obtain loans for the construction corporations and distribute these amounts through his own accounts, thus causing massive additions of reconstructed income to be imposed upon him by respondent. He had a practice of issuing checks to others which were endorsed and redeposited in his accounts for receipt purposes, which had the effect of adding to the total deposits amounts which could not be identified as nonincome items. He contends that he should not be charged with income solely for the reason that he cannot explain all his deposits.

Petitioner testified that he borrowed various amounts from a friend, Alphonse Amore, and that such borrowings amounted to approximately $6,000, $4,000, $3,000, and $1,500 in the years 1954, 1955, 1956, and 1957, respectively. There is no corroboration of petitioner's testimony, and there is no record of either petitioner or the lender to support the statements.

Petitioner says that he had only four sources of income in the taxable years: (1) Income from building, including sales of land; (2) mortgage interest, in small amounts; (3) rental income, in limited amounts; and (4) contract work of a minor nature. He contends that the amounts determined by respondent for "other business deposits" are greatly in excess of any possible income he had from the last three of these sources. He presents, on brief, a recomputation resulting in taxable income as follows:

| Year | Taxable income |
| --- | --- |
| 1954 | $14,480.44 |
| 1955 | 14,299.63 |
| 1956 | 19,931.05 |
| 1957 | 20,218.86 |

Petitioner contends that the income computed by respondent, which is 2½ to 3 times these amounts, is excessive and that his business could not generate that much.

Petitioner contends that the respondent's analysis of bank deposits must be set aside because respondent has not established a probable source of taxable income and, also, because it is arbitrary and unfair. Petitioner says that the only source suggested by respondent is contract work, and that petitioner and his crew of two to four men with his limited equipment could not conceivably perform contract work enough to realize an income of some $141,000 of unidentified bank

deposits. Petitioner argues that respondent has not informed him of the amount of net income attributed to this source.

Respondent's computation is shown in our Findings of Fact. It is based upon stipulated figures. The deposits excluded in the computation of "other business deposits" are listed in exhibits, and the checks not allowed in respondent's computation of "cost of operations" are listed by date, showing the payee and amount of each. Respondent says the details were fully discussed with petitioner's counsel before the hearing.

Bank deposit analysis is warranted where the income is reconstructed. *Granat's Estate* v. *Commissioner*, 298 F. 2d 397 (C.A. 2, 1962), affirming a Memorandum Opinion of this Court.

Petitioner's difficulties are of his own making because of his deliberate course of ignoring his responsibility for returns and records. Respondent was forced to trace all petitioner's deposits and checks and to classify them as income or nonincome, deductible or nondeductible, according to the evidence at hand. Respondent has eliminated all amounts identified as construction mortgage proceeds, other loans, redeposits, transfers, and documented sales. The stipulated facts show all the deposits and checks. Based upon the evidence, certain items are now conceded by respondent and we have found that certain others should be excluded as nonincome deposits. These are shown in our Findings of Fact. The burden is on the petitioner to establish what other items, if any, should be excluded from income or allowed as deductions. The respondent is not required to prove the negative—that all such deposits are income and that all payments are nondeductible. *Gariepy* v. *United States*, 189 F. 2d 459 (C.A. 6, 1951). We sustain the respondent's determination of taxable income with the adjustments mentioned above.

Petitioner's explanation for his failure to file returns is that he had borrowed funds to pay the tax liabilities for the years 1946 through 1953; that the burden of this debt caused him to take on considerably more work and to increase his business activities; that he attempted to assemble the information requested by his accountant for preparation of tax returns; that he tried to do this on evenings and Sundays while continuing a heavy load of work; that he fell farther and farther behind in his record keeping; that his accountant pleaded with him to "get on with the papers" and that he was unable to do this because "everything was pressing"; and that the record keeping got out of hand to a point where he "couldn't make sense with anyone" in interpreting his notes.

Petitioner contends that his failure to file returns was not due to a willful intent to evade taxes but was a consequence of the overwhelming responsibilties of the work he had undertaken and his near paralysis in attempting to fulfill them.

As to the taxable year 1956, Albert Gemma entered a plea of guilty to a charge of willful failure to file an income tax return for that year. Under principles of collateral estoppel he may not now be heard to deny that his failure to file a return for 1956 was willful. *John W. Amos*, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965); *Moore* v. *United States*, 360 F. 2d 353 (C.A. 4, 1965), modified 1966; *Tomlinson* v. *Lefkowitz*, 334 F. 2d 262 (C.A. 5, 1964). The circumstances surrounding his failure to file returns for the other years involved were no different. We have found that his failure to file returns for these 4 years was willful.

Respondent has the burden of proving by clear and convincing evidence that some part of the deficiency for each year was due to fraud.

Petitioner was fully aware of his responsibility for filing tax returns and keeping adequate records. He had been advised of this on the occasion of the investigation of his tax liabilities for the years 1946 through 1953. He admits that he knew of his obligation. He was sufficiently informed of business methods to have formed a wholly owned corporation, Mutual Realty Co., Inc., to hold title to certain apartment buildings. He engaged an accountant to prepare corporation tax returns for it. But he refused to cooperate with the accountant in the matter of his own business records and tax returns. He knew that his business was profitable, as shown by his recomputation on brief, but he chose to use his money to buy property, build houses, make loans on mortgages, pay for his daughters' education at college and travel to Europe, pay for a sports car, pay for a wedding reception, and assist a daughter in buying a house, rather than to pay his income taxes. In 1954 and 1955 he loaned $15,000 on second mortgages rather than pay income taxes for 1954. His excuse that he did not have time from his work to keep records is patently lame. He had time for extensive hunting trips and weekend ski trips. For several years he received a substantial amount of taxable income of which the Government was likely to be uninformed unless he filed a return. He avoided accurate knowledge of his income when he was aware that such knowledge was necessary. This in itself is a substantial indication of fraudulent intent. *Cirillo* v. *Commissioner*, 314 F. 2d 478 (C.A. 3, 1963), affirming on this point a Memorandum Opinion of this Court. And when a taxpayer knowingly refuses to make any statement of his income for several years, that is persuasive evidence, in connection with other facts, of an intent to defraud. *Powell* v. *Granquist*, 252 F. 2d 56 (C.A. 9, 1958); *Fred N. Acker*, 26 T.C. 107 (1956); *Charles F. Bennett*, 30 T.C. 114 (1958). He pleaded guilty to the charge of willful failure to file a return for 1956. His failure for many years to keep records or file returns was with the

intent to conceal his income from the Government and mislead respondent as to the liability for tax. Such conduct is evidence of fraud. *Spies* v. *United States*, 317 U.S. 492 (1943). The additions to tax for fraud are sustained as to Albert Gemma.

The petitioner concedes an amount of income which would require him to file a declaration of estimated tax. Therefore, the additions to tax for failure to pay estimated tax or for failure to file a declaration of estimated tax are sustained as to Albert.

The notice of deficiency was addressed to Albert Gemma and Marie (Maria) Gemma. Both petitioners signed and acknowledged the petition. They alleged that in the years 1954 through 1957 Marie was not employed and alleged upon information and belief that Marie did not realize any taxable income during these years. Respondent denied these allegations. There is no evidence that Marie had any separate income. Upon consideration of all the evidence we find that Marie had no taxable income in any of these years. In these circumstances she was under no obligation to file an income tax return or to join in any return filed by Albert. Since no return was filed there is no basis upon which she can be held liable for the deficiencies determined arising from Albert's income. There is no evidence tending to show that she was a party to the fraudulent conduct of Albert in concealing his income by avoiding the filing of tax returns. Hence, she is not liable for the additions to tax for fraud. *Cirillo* v. *Commissioner*, *supra*, affirming on this point a Memorandum Opinion of this Court (cf. *Moore* v. *United States*, *supra*). In that case the wife and husband conceded their liability for the tax other than the addition for fraud. Marie did not sign any returns for the years involved and is not liable for any of the deficiencies or additions to tax.

*Decision will be entered under Rule 50.*