Richard E. Gorman v. Commissioner.
Gorman v. Commissioner
Docket No. 6812-70.
United States Tax Court
T.C. Memo 1972-215; 1972 Tax Ct. Memo LEXIS 42; 31 T.C.M. (CCH) 1059; T.C.M. (RIA) 72215; October 10, 1972. Filed Anna R. Lavin, 53 W. Jackson Blvd., Chicago, Ill., for the petitioner. William L. Ringuette, for the respondent. *43 FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: All of the facts have been stipulated. Respondent has determined deficiencies in petitioner's income tax as follows:
Additions to Tax
Year
Deficiencies
Sec. 6653(b) [1]
Sec. 6654 [1]
1959
$20,225.75
$10,112.87
$ 561.28
1960
20,496.76
10,248.38
567.85
1961
13,377.96
6,688.98
368.54
1962
11,037.08
5,518.54
302.72
1963
15,808.50
7,904.25
435.38 The parties have stipulated that the original deficiencies which respondent computed were incorrect, and that for the years in issue petitioner actually had taxable income and owed Federal income tax in the following amounts: Year
Taxable Income
Income Tax Due
1959
$34,633.90
$ 16,352.03
1960
38,605.09
18,793.51
1961
29,906.39
13,377.96
1962
26,177.28
10,946.44
1963
26,902.82
11,558.92 In the event that we do not sustain his determination with respect to section 6653(b), respondent has, in the alternative, determined the following additions to petitioner's income tax: Additions to Tax
Year
Section 6651
Section 6653(a)
1959
$5,056.44
$ 1,011.29
1960
5,124.19
1,024.84
1961
3,344.49
668.90
1962
2,759.27
551.85
1963
3,952.13
790.43
*44 Concessions having been made, the only issues remaining for our decision are (1) whether petitioner is liable for additions to tax under section 6654 for failure to pay estimated income tax, and (2) whether petitioner is liable either for the additions to tax under section 6653(b) (fraud) or, in the alternative, for additions to tax under sections 6651 (delinquency) and 6653(a) (negligence). Petitioner resided in Oak Park, Illinois, at the time he filed the petition in this case. Petitioner failed to file either Federal income tax returns or declarations of estimated tax for any of the taxable years 1959, 1960, 1961, 1962 and 1963. Throughout the years 1959 through 1963 petitioner was a practicing attorney at law with offices in Chicago, Illinois. Prior to 1060 becoming engaged in the practice of law he had been a member of the Chicago Police Department from September 1938 until April 1948. He passed the Illinois state bar exam in 1940. While a policeman petitioner was assigned to the scientific crime detection laboratory where his principal task was the operation of a polygraph (lie detector). In May 1948 petitioner joined the staff of the United States Attorney's Office *45 in Chicago. While an assistant U.S. attorney petitioner was assigned to the criminal division and prosecuted all types of Federal criminal cases, including income tax evasion cases. Petitioner resigned from the U.S. Attorney's staff in July 1953 and entered the private practice of law in Chicago. He continued in this practice up to and through the years here in issue. In his practice petitioner specialized in the handling of Federal criminal cases, and was admitted to practice before the Illinois state courts, the U.S. District Court for the northern district of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the United States Supreme Court. During the years in issue petitioner defended several clients against whom criminal charges had been brought for violations of the Federal tax laws, and also represented clients before this Court. In November 1960 he successfully argued before the U.S. Supreme Court the landmark case of James v. United States, 366 U.S. 213 (1961), involving the criminal prosecution of his client for willful evasion of Federal income tax. Throughout this period petitioner was aware of his responsibilities to his clients, to the *46 courts before which he practiced, and to his profession. In the summer of 1959 petitioner learned that he was under investigation by the United States Attornet's Office in Chicago on the charge of subornation of a juror. He cooperated completely in the investigation and voluntarily appeared before the grand jury in April 1960. He was subsequently indicted by the grand jury in June 1960, and was acquitted of the charge by a jury trial in December 1962. During the period he was under indictment on the above charge petitioner suffered financial setbacks due to a decrease in his law practice. Petitioner also suffered emotionally from the stigma of being under indictment and on trial and sought psychiatric help. His few visits to the psychiatrist were at irregular intervals and began in the middle of 1960 and stopped sometime in 1962. Petitioner also visited a sanitarium for a week in April 1962. He was reluctant to visit either the psychiatrist or the sanitarium, and did so only at the request of his wife. Respondent's agents visited petitioner in his office in January 1965 and informed him that they had been unable to find his Federal income tax returns for the years 1960 through *47 1963. In reply to the agents' questioning petitioner stated that he had filed his returns for those years, but that his records were not in his office. Under further questioning petitioner stated that the returns had been filed late, and that he preferred to postpone further discussion of the matter until he could gather his records together. He failed to inform the agents that, in addition to the years under inquiry, he had not filed any return for 1959. In October 1965, after further postponements, petitioner again met with respondent's agents, and he was apprised of the impending criminal prosecution which the agents had recommended be brought against him for willful failure to file income tax returns for the years here in issue. Petitioner again produced no records regarding the income and expenses from his law practice during the period from 1959-1963. He was in fact well aware that he kept almost no books and records during this period. In March 1966 petitioner was indicted for the crime of willfully failing to file his Federal income tax returns for the years 1959 through 1963. Sec. 7203. He entered a plea of not guilty and a jury trial was held in September 1966, at which *48 he was found guilty. After sentencing he appealed and his conviction was affirmed in United States v. Gorman, 393 F. 2d 209 (C.A. 7, 1968), certiorari denied 393 U.S. 832 (1968). Petitioner filed his Federal income tax returns and paid the taxes due for the period from 1953 through 1958. He filed his Federal income tax return for 1964 in April 1965, approximately three months after he received his initial visit from respondent's agents. Throughout the period here in question petitioner knew that he owed Federal income tax, that he was required to file 1061 Federal income tax returns, and that he had neither filed such returns nor paid such tax. Petitioner also had an extensive knowledge of Federal income tax law throughout these years. The primary issue to be decided is whether petitioner is liable for the civil fraud penalty under section 6653(b). [2] Respondent has the burden of proving by clear and convincing evidence that petitioner is liable for the fraud penalty (Sec. 7454 (a)), but his burden can be met with circumstantial evidence. Powell v. Granquist, 252 F. 2d 56 (C.A. 9, 1958); Zelma Curet Miller, 51 T.C. 915 (1969); *49 Frank Imburgia, 22 T.C. 1002, 1014 (1954). After an exhaustive examination of a rather lengthy record, we have concluded that respondent has clearly demonstrated petitioner's liability under section 6653(b), and we so hold. In order for fraud to be established respondent must clearly show that petitioner had a specific intent to evade a tax known to be owing. Powell v. Granquist, 252 F. 2d 56, 60 (C.A. 9, 1958) and cases cited. It is well established that a failure to file Federal income tax returns is by itself insufficient to establish fraud. See, e.g., First Trust & Savings Bank v. United States, 206 F. 2d 97 (C.A. 8, 1953); Anson Beaver, 55 T.C. 85, 93 (1970). However, where there are significant corroborating indications of a fraudulent intent to evade taxes, a consistent failure to file over a period of years can be used to support a finding of fraud. Veino v. Fahs, 257 F. 2d 364 (C.A. 5, 1958); Anson Beaver, supra. *50 The record in this case contains a number of such corroborating indications. Petitioner was plainly aware that he was required to file Federal income tax returns and pay the tax due. He had filed the required income tax returns and declarations of estimated tax for the period from 1954 through 1958. He was a lawyer with extensive experience in handling tax evasion cases, both as an assistant United States attorney and as a private practitioner. During the years in issue petitioner represented several clients accused of tax crimes, including the defendant in the wellknown case of James v. United States, 366 U.S. 213 (1961), which he argued before the Supreme Court. Despite his understanding of his responsibilities, petitioner failed for five consecutive years to file either declarations of estimated tax or Federal income tax returns. Nor did he request extensions of the time in which he could file his returns. Such facts can be used to support a finding of fraud. Stoltzfus v. United States, 398 F. 2d 1002 (C.A. 3, 1968); Cirillo v. Commissioner, 314 F. 2d 478, 483 (C.A. 3, 1963), affirming in part a Memorandum Opinion of this Court; Irolla v. United States, 390 F. 2d 951, 954 (Ct. Cl. 1968); *51 Albert Gemma, 46 T.C. 821, 834 (1966); Arlette Coat Co., 14 T.C. 751, 756 (1950). Another factor weighing against petitioner is his evasive, uncooperative, and dilatory conduct when he was first visited by respondent's agents in January 1965. He initially indicated that he had actually filed his returns but had filed them late. He also promised to furnish the agents with records which he knew he did not have. In fact, petitioner's records for the years in issue were virtually nonexistent. Petitioner also managed to delay a further meeting with the agents until the following October, even though he agreed at the January meeting to meet with the agents again shortly. Such behavior can also be taken as an indication of fraud. Powell v. Granquist, supra; Irolla v. United States, supra. Even more damaging to petitioner are the indications in the record that, if he had not been caught by respondent's agents, he would have continued failing to file his returns. He did not file his return for 1964 until three months after respondent's agents contacted him regarding his missing returns for the years 1959 through 1963. Petitioner kept *52 no records and was vague and misleading. It is readily apparent that any nebulous intention which petitioner may have had to pay his taxes was conditioned on being caught. In addition to the above, petitioner has not advanced a persuasive explanation of his repeated failures to file returns. The lack of any such explanation can be used to support a finding of intent to evade tax. Stoltzfus v. United States, supra; Albert 1062 Gemma, supra; Fred N. Acker, 26 T.C. 107, 113 (1956); Ollie V. Kessler, 39 B.T.A. 646, 653 (1939). Petitioner has argued, as his excuse for not filing, the mental strain which resulted from his indictment and trial on the charge of subornation of a juror. He was indicted in June 1960 and acquitted by a jury trial in December 1962. Yet it was in April 1964, nearly a year and one-half after his acquittal, that petitioner failed to file his 1963 return. And it was not until January 1965, more than two years after his acquittal, that he was first confronted by respondent's agents, at which time he had not filed a return since 1958. The testimony given in petitioner's defense at his 1966 trial by his own *53 expert psychiatric witness indicates that the mental strain produced by the accusations against him would not have had such a prolonged effect on his psyche. In fact, the psychiatrist described petitioner's mental state during the years in issue as "not uncommon," and further testified that petitioner was "aware of reality" and "knew right from wrong." Furthermore, petitioner was able throughout this period to actively pursue his profession as a lawyer. Several of his clients stood accused of various Federal tax crimes, and petitioner apparently represented them all competently. Although we are not unsympathetic to petitioner's misfortune, we fail to see how his plight during the years in issue differs materially from that suffered by other taxpayers who, in the face of comparable adversity, have continued to act responsibly and file their returns and pay their taxes. Respondent has also determined that petitioner is liable for additions to tax under section 6654 for underpayment of estimated tax for the years in issue. Petitioner comes within none of the exceptions in section 6654(d), and thus imposition of this penalty is mandatory. Anne Goyne Mitchell, 51 T.C. 641, 648 (1969), *54 reversed on other grounds 430 F. 2d 1 (C.A. 5, 1970), reversed and Tax Court decision reinstated 403 U.S. 190 (1971); Estate of Barney Ruben, 33 T.C. 1071 (1960). Our holding with respect to section 6653 (b) has obviated consideration of respondent's arguments under sections 6651(a) and 6653(a). Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. (b) Fraud. - If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩