EDMUND F. WOLK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolk v. Commissioner
Docket No. 1925-81.
United States Tax Court
T.C. Memo 1985-112; 1985 Tax Ct. Memo LEXIS 519; 49 T.C.M. (CCH) 944; T.C.M. (RIA) 85112; March 14, 1985. Edmund F. Wolk, pro se. Jack H. Klinghoffer, Vallerie Volesko, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and imposed additions to tax as follows: Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1969
$18,643.41
$9,321.71
$596.37
1970
$10,973.43
$5,486.72
$351.02
1971
$23,490.18
$11,745.09
$752.35
1972
$ 7,563.97
$3,781.99
$241.97
In his answer to petitioner's amended petition, respondent pleaded, in the alternative, that if he were not sustained *522 with respect to the additions to tax under section 6653(b) then petitioner is liable for additions to tax as follows: Year
Sec. 6651(a)(1)
Sec. 6653(a)
1969
$4,660.85
$932.17
1970
$2,743.36
$548.67
1971
$5,872.54
$1,174.50
1972
$1,890.99
$378.20
After concessions [2] the issues for decision are (1) whether petitioner has unreported income from his legal practice in the amounts determined by respondent for the years at issue; (2) whether petitioner is entitled to deductions for expenses related to his legal practice in excess of the amounts allowed by respondent; (3) whether any part of the underpayment for each of the years at issue was due to fraud; (4) in the alternative, whether any part of the underpayment for each of the years at issue was due to negligence and whether petitioner's failure to file Federal income tax returns for each of the years at issue was due to willful neglect; and (5) whether petitioner is liable for the addition to tax under section 6654(a) for underpayment of estimated tax for each of the years at issue. *523 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. [3]
Petitioner resided in Riverdale, New York, when he filed his petition in this case. Petitioner graduated from Cornell Law School in 1955 and was subsequently admitted to practice law in the State of New York. In addition to his degree from Cornell Law School, petitioner received a masters of law with a specialization in taxation from New York University Law School. During the years at issue petitioner rendered legal services through a sole proprietorship. Among the legal services which petitioner *524 provided were drafting leases, resolving landlord tenant matters, preparation for trial in litigation relating to a joint real estate venture, and handling estate matters, including estate taxation. Clients and colleagues of petitioner during the years at issue were aware that he was a competent attorney but felt that he was under unusual stress. They also were aware that, at that time, petitioner was not fully performing his legal responsibilities. On April 27, 1972, petitioner was censured by the Committee on Grievances of the Association of the Bar of the City of New York for neglect. Petitioner employed another attorney, Ira L. Zankel ("Zankel"), to assist him in his practice. Zankel was employed by petitioner from January 3, 1970, through approximately November 15, 1972. Zankel carried out his responsibilities according to instructions from petitioner, and petitioner supervised Zankel's work. Petitioner paid Zankel on a weekly basis. Prior to the years at issue, petitioner had rendered legal services through the partnership of West & Wolk. Petitioner was not involved in the administrative aspects of the practice during his affiliation with West & Wolk. Bernard West *525 ("West"), petitioner's partner, performed these responsibilites as he believed petitioner was not a competent administrator. After West left the partnership in May of 1968, petitioner continued to maintain the books and records of the practice for the balance of 1968. Petitioner merely followed the recordkeeping format set up by West at the beginning of 1968. After 1968 petitioner did not adequately maintain the books and records of his legal practice. Petitioner did, however, keep checks to reflect expenses of his practice and income sheets to reflect income of his practice. Petitioner was legally married to Barbara Wolk during all of the years at issue. Barbara Wolk earned only $796 in 1969, $398 in 1970, and nothing in 1971 and 1972. In February of 1970 petitioner's marriage to his wife began to deteriorate. Initially petitioner continued to live at their marital residence but periodically slept at his office. To avoid confrontation with his wife, petitioner often returned to the marital residence late in the evening. On a number of occasions, petitioner was locked out of the marital residence and gained access to the marital residence by physically removing the lock *526 or through assistance of the police. Petitioner did not permanently abandon the marital residence because of his concern for his two young children. Petitioner's wife was unable to properly care for the children, and petitioner often was required to assume the primary care responsibilities for the children. However, petitioner's marriage continued to falter, and there were violent arguments between petitioner and his wife which, on a number of occasions, resulted in intervention by the police. In July of 1972 petitioner left the marital residence with his two children. Petitioner and Barbara Wolk executed a separation agreement in September of 1972 which gave petitioner custody of his two children. In 1974 they were divorced. Petitioner kept a portion of the checks and the income sheets that he maintained for his legal practice at the marital residence. At the time petitioner left the marital residence, those documents disappeared. Petitioner and his wife filed Federal income tax returns for the years 1966 through 1968. Petitioner filed extension requests for each of the years at issue, but he did not file Federal income tax returns for these years. Petitioner did not *527 make any estimated tax payments nor did he otherwise make payment for his Federal income tax liability for any of the years at issue. Representatives of the Internal Revenue Service met with petitioner in 1971, 1972, and 1973 to discuss payment of withholding and social security taxes. During these interviews petitioner admitted that he had not filed returns for prior years. On August 17, 1973, petitioner was interviewed by Anthony Cappacio ("Cappacio"), a special agent with the Intelligence Division of the Internal Revenue Service. Again petitioner admitted that he had not filed Federal income tax returns for prior years although he was aware of his duty to do so. At that interview petitioner also stated that he received approximately $15,000 per year in net income from his legal practice for each of the years 1969 through 1972 and $500 each month in management fees beginning in July of 1971. Cappacio met with petitioner again on October 3, 1973. During the interview on October 3, 1973, petitioner stated that all of the deposits into his business bank account were income items. Subsequently, petitioner submitted four tentative, unsigned Federal income tax returns [4] to *528 Cappacio which reflected gross income in an amount less than deposits in the business bank account. Petitioner described the disparity between the deposits and the amounts listed on the documents which he submitted to Cappacio as "wash transactions." The amounts petitioner estimated as net income from his legal practice were $10,696 in 1969, $9,556 in 1970, $20,454 in 1971, and $22,422 in 1972. Petitioner admitted to Cappacio that he had no records to substantiate the amounts which he claimed were not income items. During his interviews with Cappacio petitioner gave Cappacio all of the checks which petitioner claimed were in his possession and worksheets prepared by petitioner. Petitioner answered all of Cappacio's questions except those pertaining to client accounts and client diaries. On April 2, 1976, a four count information was filed in the United States District Court for the Southern District of New York charging petitioner with violations of section 7203 for willful failure to file Federal income tax returns required for the years *529 1969 through 1972. On July 12, 1976, a jury found petitioner guilty of all four counts. A statutory notice of deficiency for all of the years at issue was sent to petitioner on November 25, 1980. Respondent determined petitioner's gross receipts by use of the bank deposits method. These amounts represented deposits into three checking accounts which petitioner maintained or controlled. In 1969 and 1970 there were several months in which no bank statements were available and the deposits for those months were calculated by comparing the closing balance at the end of the prior month with the opening balance at the beginning of the succeeding month.From these amounts respondent eliminated deposits identified as nonincome items. From the gross receipts amounts determined by the bank deposits method, respondent deducted expenses attributable to petitioner's business. These expense amounts were taken from the tentative Federal income tax returns submitted to Cappacio by petitioner. For purposes of determining the application of the fraud addition under section 6653(b), the amount of unreported net income from petitioner's legal practice was reduced to $15,174.24 for 1969, $13,147.83 *530 for 1970, $34,342.56 for 1971, and $28,840.86 for 1972. Petitioner claims that respondent's determinations are in error. Petitioner stated that he could not recall any amounts representing fees from clients being deposited in his joint account, but could not otherwise identify any deposits made into that account which did not represent taxable income. At the trial of this case, petitioner specifically identified checks which represented expenses of his business in 1969. [5] However, petitioner conceded that the checks he could identify would not be greater in amount than the deductions allowed by respondent. Petitioner presented no proof as to the expense items for the other years or as to the income amounts determined by respondent. Further, petitioner conceded both during his interviews with Cappacio and at the trial of thus case that he had no proof that his income was less than the amount determined by respondent. *531 OPINION We must first consider petitioner's claim that respondent's determinations of his gross receipts from his legal practice for the years before us are in error. A taxpayer is required to maintain records sufficient to show whether or not he is liable for Federal income taxes. Sec. 6001.Where a taxpayer fails to maintain adequate records, the Commissioner may use other means to determine his income. Sec. 446(b). The bank deposits method has long been sanctioned by this Court and others as an acceptable method of computing income. Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d (6th Cir. 1977), and cases cited therein. Here, petitioner failed to maintain and submit to respondent adequate records as to the amount and source of his income. Respondent, therefore, determined that bank deposits made by petitioner are income to him, and petitioner bears the burden of showing that respondent's determination is incorrect. Estate of Mason v. Commissioner,supra at 657; Harper v. Commissioner,54 T.C. 1121, 1129 (1970). Respondent need not prove that all deposits are income. Estate of Mason v. Commissioner,supra at 657; *532 Gemma v. Commissioner,46 T.C. 821, 833 (1966). Petitioner has done nothing in this case to show that respondent's determinations are incorrect. Petitioner stated during his interviews with Cappacio that he did not have sufficient records to properly compute his income. At the trial of this case petitioner admitted that he could not prove that his gross receipts were any less than determined by respondent. Petitioner could not specifically identify any item reflected in respondent's calculation of gross receipts which would be a nontaxable deposit. We observed petitioner closely during the trial of this case. Our observation and petitioner's own statements lead us to the conclusion that petitioner himself cannot determine the amount of gross receipts for any of the years at issue. Petitioner, therefore, has not met his burden of proving that respondent's determinations are in error. On the basis of the record herein, we must sustain respondent's determination of petitioner's unreported gross receipts from his legal practice for each of the years at issue. We must also sustain respondent's determination that allowable business expenses for the years at issue *533 are limited to the amounts initially claimed by petitioner on the tentative Federal income tax returns he submitted to Cappacio. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Respondent's determinations are presumptively correct, and the burden of proof rests with petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). If petitioner can establish that some deductible expenditures have been made, absolute certainty is not required, and the Court may approximate the allowable deductions "bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). In the instant case petitioner has presented no evidence that he is entitled to deductions in excess of those allowed by respondent. Petitioner conceded that he could not specifically identify any expense amounts in excess of the amounts allowed by respondent. Further, the expense amounts permitted by respondent were identical to the amounts which petitioner himself estimated for each year. Under these circumstances we *534 cannot find that petitioner has substantiated deductions for any amounts in excess of those permitted by respondent, nor can we find that petitioner has provided any basis for the application of the rule enunciated in Cohan v. Commissioner,supra.
On the basis of this record we must sustain respondent's determination of petitioner's expenses for each of the years at issue. We must next consider whether any part of the underpayment for each of the years at issue was due to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). The burden of proving fraud is on respondent. Sec. 7454(a); Rule 142(b). Respondent must affirmatively establish by clear and convincing evidence that some part of an underpayment for each year was due to fraud. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Gemma v. Commissioner,supra at 834. Respondent may meet his burden of proving fraud through circumstantial evidence. Halle v. Commissioner,175 F.2d 500, 503 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950); *535 Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984)Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Proof of failure to file returns, alone, does not establish fraud. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). However, a pattern of nonfiling coupled with some "convincing affirmative indication" of the requisite specific intent to defraud is sufficient to establish fraud. Stoltzfus v. U.S.,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969). Here, we are simply not convinced that petitioner's failure to file his Federal income tax returns for the years at issue was designed to evade taxes believed to be owing. In reaching this decision we are not unmindful of the fact that petitioner is a lawyer, seemingly sophisticated in tax matters, who was aware of his duty to file Federal income tax returns. Although petitioner had a post graduate law degree with a specialization in taxation, it is apparent to us that his practice did not encompass *536 general tax matters. [6]
The evidence presented by the parties indicates that petitioner had experienced serious personal problems beginning in February of 1970. Although petitioner continued to maintain his legal practice, colleagues and clients were aware that he was under unusual stress. Petitioner was not fully performing his legal responsibilities, and in 1972 petitioner was censured by the Committee on Grievances of the Association of the Bar of the City of New York for neglect. Petitioner filed extension requests for each of the years at issue. Petitioner voluntarily admitted to representatives of the Internal Revenue Service that he had not filed Federal income tax returns for the years at issue. Three of these occasions were interviews unrelated to petitioner's Federal income tax liability for the years at issue. These interviews apparently predated respondent's investigation into petitioner's Federal income tax liability for the years at issue. In addition petitioner gave Cappacio cancelled checks and bank statements relating to the years at issue, certain worksheets, *537 and estimates of the income from his law practice. Petitioner testified that he had no other cancelled checks or bank statements available at the time of Cappacio's investigation, and his testimony was uncontroverted. Although respondent maintains that petitioner did not cooperate in the investigation into his Federal income tax liability for the years at issue, the evidence in the record contradicts respondent's contention. Respondent's claim is based on petitioner's failure to produce client diaries. However, petitioner maintains that this information was privileged, and we find that his position in this respect was reasonable under the circumstances. See NY CODE OF PROFESSIONAL RESPONSIBILITY DR 4-101 (B) (1970). Petitioner was not involved in the administrative aspects of his legal practice prior to 1968 when his partnership with West was terminated. West had voluntarily assumed these responsibilities because he believed that petitioner was a poor administrator. After West terminated his affiliation with petitioner, petitioner followed the recordkeeping format set up by West for 1968 but was unable himself to establish anything more than a rudimentary accounting system. *538 A portion of the records petitioner did maintain had disappeared when he left the residence which he shared with his wife. All of the above factors lead us to the conclusion that respondent has not met his burden of proving that petitioner's actions were designed to evade a tax believed to be owing. [7] Rather we conclude that petitioner underwent an emotional trauma which, together with his inaptitude for detail, resulted in his willful failure to comply with the requirement of filing the returns for which he had requested an extension. [8] The record supports the conclusion that his intent was to defer consideration of his tax liability for the years at issue until a time when he was emotionally capable of doing so. We can find no affirmative acts to conceal or otherwise avoid the reporting and payment of petitioner's taxes, and in this respect his request for extensions of time to file the returns and admissions to respondent's agents contradict a conscious effort to evade reporting and payment or taxes. *539 On the basis of this record we cannot sustain respondent's determination that petitioner's underpayment for each of the years at issue was due to fraud. In the alternative respondent maintains that petitioner is liable for the additions to tax under sections 6651(a)(1 ) and 6653(a) for each of the years at issue. Since these issues were raised by affirmative allegation in respondent's answer, respondent has the burden of proof with respect to these issues. Rule 142(a). Here, there is ample evidence to meet respondent's burden of proof with respect to both additions to the tax. Petitioner, himself, concedes that he would have some taxable income for each of the years at issue. Therefore, it is clear that petitioner was required to file Federal income tax returns for each of these periods under section 6012(a)(1) and that there was an underpayment as defined by section 6653(c)(1) for each of the years at issue. Section 6651(a)(1) provides that there shall be an addition to the tax where a taxpayer fails to file his Federal income tax return unless such failure is due to reasonable cause and not willful neglect. Petitioner was convicted under section 7203 of willfully failing *540 to file Federal income tas returns for each of the years at issue. Under the doctrine of collateral estoppel we are bound to find as an established fact that petitioner's failure to file his returns for the years at issue was willful. [9]Gemma v. Commissioner,supra at 834. Consequently, we must sustain respondent's determination that petitioner is liable for the addition to the tax under section 6651(a)(1) for each of the years at issue. Section 6653(a) provides that there shall be an addition to the tax if any part of any underpayment is due to negligence or intentional disregard of the rules or regulations. Petitioner concedes that he failed to maintain adequate records although required to do so by section 6001. In addition petitioner knew that he was required to file Federal income tax returns for each of the years at issue but failed to do so. Although we have concluded that this failure does not evidence an intent to evade petitioner's tax liability, it does support a finding that any underpayment created as a result of petitioner's failure to file was due to negligence. Consequently, *541 we must sustain respondent's determination that petitioner is liable for the addition to tax under section 6653(a) for each of the years at issue. Finally, we must consider the issue of whether petitioner is liable for the addition to tax under section 6654(a). Section 6654(a) provides, in pertinent part: In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment * * * for the period of the underpayment * * * The taxes withheld on wages are deemed to be payments of estimated tax for purposes of applying section 6654. The addition to tax under section 6654(a) is mandatory unless petitioner is within one of the computational exceptions of section 6654(d). Grosshandler v. Commissioner,supra at 20-21. Extenuating circumstances are irrelevant. Estate of Ruben v. Commissioner,33 T.C. 1071, 1972 (1960). Petitioner did not make any estimated payment for years 1969 through 1972 nor did he otherwise *542 make payment for his Federal income tax liability for any of these years. Petitioner has not shown that he is within one of the enumerated exceptions of section 6654(d), and on the basis of the record respondent's determinations as to the additions to tax under section 6654(a) must be sustained. [10]
*543 We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner apparently does not dispute respondent's determination of his self employment tax liability under sec. 1401 for each of the years at issue. We note that in each year petitioner determined net income from his legal practice in excess of the base amount in sec. 1402(b)(1).↩
3. The parties have offered into evidence the transcript of proceedings in U.S. v. Wolk,↩ 76 Cr. 314 (S.D. N.Y. 1976) a criminal case involving petitioner's trial for violations under sec. 7203 for the same years as are at issue in this case. The parties have stipulated that the witnesses in that case would testify in the same manner in this case. No objection was made to the introduction of any of the testimony into evidence, and we have therefore incorporated this material into our findings.
4. These documents do not constitute valid Federal income tax returns. Cupp v. Commissioner,65 T.C. 68, 75↩ (1975).
5. Petitioner also sought to introduce as Exhibit 65 an estimated schedule of presumed disbursements and nonincome items for 1969. In four of the 12 months for which petitioner prepared estimates, some or all of the items listed were computed based on the assumption that any check reflected on petitioner's bank statements which was in an odd amount was an expense or a nonincome item. In one of the 12 months, petitioner simply estimated his expense or nonincome items by averaging the amounts he determined for the other 11 months. With the exception of the checks which petitioner could identify, petitioner provided absolutely no support for his computations. Consequently, we find that Exhibit 65 has no probative value and have not otherwise considered it in our determinations.↩
6. Petitioner did handle some estate matters where some of his tax education was utilized.↩
7. Indeed, the Supreme Court, Appellate Division, of the State of New York which censured petitioner for his conviction under sec. 7203 observed that "there appears to have been no dishonesty on respondent's [Wolk's] part in the sense of filing a false return * * *" Matter of Wolk,61 A.D.2d 691, 403 N.Y.S. 2d 737↩ (1978). 8. One commentator has defined the willfulness required under sec. 7203 as follows: Under the Bishop doctrine, willfulness under section 7203, as in all Internal Revenue offenses, means the "voluntary, intentional violation of a known legal duty." More specifically, willfulness means the deliberate and intentional failure to file a return when the taxpayer knows that one ought to be filed and that he is disobeying the law by his failure to file. However, under this section, willfulness does not require proof that the taxpayer intended to evade the reporting or payment of taxes. [Emphasis added,; footnote reference omitted.] Fink, Tax Fraud, sec. 16.05, p. 16-12 (4th ed. 1983).↩
9. Respondent raised the issue of collateral estoppel in his answer.↩
10. Petitioner argues that his Federal income tax liability for the years at issue should be computed on the basis of the rates applicable to married individuals filing joint returns. However, an election to make a joint return to which these rates apply may not be made after respondent has issued a notice of deficiency based on separate rates to either spouse and that spouse has filed a petition with this Court. Thompson v. Commissioner,78 T.C. 558, 561 (1982). Consequently, we have not further considered petitioner's claim. On brief petitioner also requests a new trial arguing that the Court improperly failed to permit him to testify regarding the propriety of respondent's determinations. Apparently, petitioner's objection relates to the offer of proof he made as to deductible expenditures and items he designated as nonincome. Petitioner's proof was based, in part, on the assumption that any check in an odd amount represented a deductible expenditure. Petitioner presented no basis for this assumption other than his statement that he would not make an odd amount check payable to himself. We rejected this offer of proof as having no probative value. However, we gave petitioner ample opportunity to otherwise present evidence as to the amount of income and expenses for the years at issue. Petitioner himself, conceded that he could not prove that he had income in an amount less than determined by respondent or expenses greater than those determined by respondent. See also note 5, supra.↩