T.C. Memo. 2002-318

UNITED STATES TAX COURT

THOMAS LEE WOODALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2644-01.                    Filed December 30, 2002.

Thomas Lee Woodall, pro se.

<u>Frank J. Jackson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following
deficiencies in, additions to, and penalties on petitioner's
Federal income taxes:[1]

---

[1]  All figures are rounded to the nearest dollar.

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Sec. 6654 | Penalty Sec. 6662 |
|------|-----------|--------------------------|-----------|-----------|
| 1992 | $117,034 | $29,258 | | $23,407 |
| 1993 | 361,493 | 90,373 | $5,447 | |
| 1994 | 48,973 | 12,243 | 2,541 | |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are: (1) Whether petitioner had additional unreported income for 1992, 1993, and 1994, (2) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for 1992, 1993, and 1994, (3) whether petitioner is liable for an addition to tax pursuant to section 6654 for 1993 and 1994, and (4) whether petitioner is liable for a penalty pursuant to section 6662 for 1992.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner resided in New York, New York.

---

[2] Petitioner concedes that deposits totaling $168,948, $133,022, and $41,124 in 1992, 1993, and 1994, respectively, are taxable income to petitioner for 1992, 1993, and 1994, respectively. Respondent concedes that deposits totaling $3,897, $3,665, and $3,951 in 1992, 1993, and 1994, respectively, are not taxable income to petitioner. Additionally, respondent concedes that petitioner received gifts totaling $10,000 in 1992 and $19,949 in 1993.

Petitioner's Law Practice

Petitioner is an attorney. In 1973, petitioner received his law degree and was admitted to the Texas bar. As of the time of trial, petitioner was licensed to practice law in Texas, was in good standing in Texas, and was engaged in the practice of law.

During 1992, 1993, and 1994, petitioner was engaged in the practice of law in Texas. During that time, petitioner worked as an independent attorney out of the law office of Patrick V. Strong, Esq. Petitioner had several overseas clients. Petitioner also worked on Mr. Strong's cases. In 1992, Mr. Strong paid petitioner $38,692.

Petitioner has no records from his law practice. Petitioner has no documents that establish his relationship with Norman D. Haynes (Mr. Haynes) or any project in the Philippines.

Petitioner's Bank Accounts and Additional Bank Deposits[3]

A. Cullen Bank

In 1992, 1993, 1994, deposits totaling $124,055, $1,000, and $38,194, respectively, were made into Cullen Bank[4] account number 50-0187453 (Cullen #453). Cullen #453 was styled "Manila Recovery Company".

In 1992, 1993, 1994, deposits totaling $105,000, $584,236,

---

[3] These deposits are in addition to those conceded by petitioner and respondent. See supra note 2.

[4] As of the time of trial, Cullen Bank had changed its name to Frost National Bank.

and $5,658, respectively, were made into Cullen Bank account number 50-0188921 (Cullen #921). Cullen #921 was styled "Manila Exploration Company-Eldridge".

In 1993 and 1994, deposits totaling $120,800 and $55,663, respectively, were made into Cullen Bank account number 50-1211226 (Cullen #226). Cullen #226 was styled "Manila Exploration Company Rizal".

For convenience, Cullen #453, Cullen #921, and Cullen #226 are hereinafter collectively referred to as the Manila Accounts. The Manila Accounts were not client trust accounts. Petitioner's Social Security number was the only Social Security number on the Manila Accounts. Petitioner was one of two signatories on the Manila Accounts, and each of the Manila Accounts required only one signature.

The Manila Accounts bank statements were sent to petitioner at his law office address. Petitioner received the bank statements for the Manila Accounts for 1992, 1993, and 1994.

Petitioner made intrabank transfers between the Manila Accounts. Petitioner also made intrabank transfers from the Manila Accounts to a "trust account" he had at Cullen Bank, account number 50-0784338 (Cullen trust account). During the years in issue, petitioner deposited money that was income to him into his Cullen trust account. During the years in issue, petitioner wired at least $214,000 from the Manila Accounts to an

offshore account in the Philippines.  In 1993, petitioner also wired $5,000 from Cullen #921 to a bank in Washington State.

B.    Nations Bank

Petitioner had a bank account, number 266-216660-1, at Nations Bank styled "Thomas Lee Woodall, Attorney at Law Trust Account" (Nations trust account).  Petitioner's Social Security number was on the Nations trust account.

In June 1993, a $100,000 deposit was made into the Nations trust account.  The $100,000 was wired from offshore into the Nations trust account.  Between June 30 and July 2, 1993, petitioner wrote 21 checks on the Nations trust account totaling $99,950--19 checks for $5,000, 1 check for $3,500, and 1 check for $1,450.

Tax Returns and Notice of Deficiency

Petitioner filed his 1992 Federal income tax return on April 28, 1994.  On his 1992 return, the only income petitioner reported was $38,692 of business income.  Attached to the 1992 return was a Form 1099-MISC, Miscellaneous Income, that reported $38,692 paid to petitioner by Mr. Strong.  The 1992 return listed $0 of tax withheld and $0 of estimated tax payments.

Petitioner did not file Federal income tax returns for 1993 and 1994.

Respondent timely issued a statutory notice of deficiency to petitioner for 1992, 1993, and 1994.  Respondent computed

petitioner's taxable income for 1992, 1993, and 1994 using the bank deposits method.  Respondent eliminated transfers and nontaxable sources of income from his bank deposits computation.

OPINION

I.  Unreported Income

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income.  Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  For the years in question, we find that petitioner maintained inadequate books and records for his law practice.

Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly reflects income.  Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances.  Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).  The Commissioner is given latitude in determining which method of reconstruction to apply when a taxpayer fails to maintain records.  Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).

Respondent employed the bank deposits method of proof to

reconstruct petitioner's gross receipts from his law practice. This method of proof is well established.  <u>DiLeo v. Commissioner</u>, <u>supra</u> at 867; <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  Bank deposits are prima facie evidence of income.  <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 656-657.  When using the bank deposits method, the Commissioner is not required to show that each deposit or part thereof constitutes income, <u>Gemma v. Commissioner</u>, 46 T.C. 821, 833 (1966), or prove a likely source, <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645 (1994); <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 657.  Unless the nontaxable nature of deposits is established, gross income includes deposits to bank accounts where the taxpayer has dominion and control of the funds.  <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 431 (1955); <u>Davis v. United States</u>, 226 F.2d 331, 334-335 (6th Cir. 1955); <u>Manzoli v. Commissioner</u>, T.C. Memo. 1988-299, affd. 904 F.2d 101 (1st Cir. 1990).  Respondent's determination is presumed to be correct, and petitioner bears the burden of proving otherwise.[5]  Rule 142(a).

A.  <u>Manila Accounts</u>

Petitioner claims that Mr. Haynes was his client and that he (petitioner) set up the Manila Accounts as an accommodation to

---

[5]  Sec. 7491 is inapplicable, as the audit in this case started in 1994.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

Mr. Haynes as part of an alleged treasure hunting operation--searching for gold allegedly hidden by the Japanese in the Philippines during World War II--being conducted by Mr. Haynes in the Philippines (Manila projects).  Petitioner claimed that he entered into some type of agreement with Mr. Haynes (agreement) in order to open the Manila Accounts.  Petitioner argues that all the money that was deposited into the Manila Accounts was capital contributions from various investors for the alleged treasure hunting operation.

Petitioner did not provide a copy of the agreement to the Court and claims he does not have a copy of the agreement. Additionally, petitioner has no records that show Mr. Haynes or the Manila projects as clients of his law practice.  Contrary to petitioner's assertions, the signature cards for the Manila Accounts clearly show that the Manila Accounts were not trust accounts.

Petitioner testified that he was not held out as an investor in any of the purported Manila projects, he was not a partner in the purported Manila Exploration Company-Eldridge project, and he never had an equity interest in any Manila partnerships.

The only document in evidence about the Manila projects, entitled Project Update for Manila Exploration Company Eldridge Recovery, Ltd., lists petitioner as a major investor in the Manila projects, as one of the Manila projects' strongest

supporters over a number of years, as having a small interest in "Phase I", as having invested a substantial sum of cash, and as Co-Managing General Partner of Manila Exploration Co. - Eldridge, Ltd. (USA). Thus, the money wired from the Manila Accounts to the Philippines appears to represent the substantial sums of cash that the Project Update states petitioner invested in the Manila projects.

We note that neither Mr. Haynes nor any of the alleged investors in the Manila projects were called as witnesses.[6] We infer that their testimony would not have been favorable to petitioner. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

---

[6] At trial and on brief, petitioner repeatedly argued that petitioner and respondent had an agreement to stipulate three affidavits--including an affidavit of Mr. Haynes--that the Court did not receive into evidence after sustaining respondent's hearsay objections. Petitioner claims respondent "duped" petitioner into not having his witnesses at trial.

At trial, the Court asked respondent: "Did you all have an agreement that you all would stipulate to those affidavits?" Petitioner claims that respondent gave a carefully crafted answer to avoid directly answering this question. Respondent, however, replied, "At no time was there ever an agreement."

In addition to offering hearsay, at trial petitioner stated that he had a witness waiting for a call from the Court so that the witness could "testify" via speaker phone.

Petitioner was a trial attorney. Petitioner has been an attorney for almost 30 years. Petitioner stated, that as an attorney, he knew that the affidavits were not admissible in evidence and he should have known better. At trial, petitioner stated that he had a "lame excuse" for failing to get his witnesses to the trial. We agree.

Petitioner claims that none of the deposits into the Manila Accounts during 1992, 1993, and 1994 were his income "except for $36,000 to $38,000" from which he made intrabank transfers to his personal account at Cullen Bank. Petitioner relies on his own self-serving testimony to support this conclusion. Petitioner's testimony was questionable, vague, conclusory, and unsupported by the evidence in the record. Under these circumstances, we are not required to, and do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Tokarski v. Commissioner, supra at 77.

Petitioner had dominion and control over the Manila Accounts. Petitioner had the power to make withdrawals out of the Manila Accounts. His Social Security number was the only one on the Manila accounts, his name was on the Manila Accounts, he was one of two signatories on the Manila accounts, and his business address was on the Manila Accounts. Petitioner made intrabank transfers into and out of the Manila Accounts and wired money domestically and overseas from the Manila Accounts.

There is, however, documentary evidence suggesting that five deposits into the Manila Accounts are not income to petitioner. The revenue agent's work papers were submitted as evidence. For 1993, the revenue agent listed as deposits into Cullen #226 a

check from Mark E. Weaver in the amount of $25,000 and a check from Michael C. Dawson in the amount of $10,000. The "memo" line of Mr. Weaver's check contained the phrase "Philippine Investment" and the "memo" line of Mr. Dawson's check contained the phrase "Rizal Ptnership". Cullen #226 was styled "Manila Exploration Company Rizal".

For 1994, the revenue agent listed as deposits into Cullen #226 a check from George A. Balian in the amount of $1,500 and a check from "Nationwide Ins." in the amount of $3. The "memo" line of Mr. Balian's check contained the phrase "Rizal Ptnership Phase II" and the revenue agent noted that the "Nationwide Ins." check was paid to Norman D. Haynes and endorsed over to Manila CK58351228.

The account statements for Cullen #453 include a copy of one of the checks deposited into the account during the years in issue and the associated deposit ticket. The deposit ticket is dated July 15, 1993, and lists a single deposit of $1,000. The check deposited into Cullen #453 is dated July 4, 1993. The printed name on the top of the check is "Deepsea Recovery Corp.", the check is made payable to the order of Norman Haynes, the check is endorsed by Norman Haynes, the check contains the notation "Post Dated-Loan Repayment", the amount of the check is $1,000, and the check is signed by someone whose first name is Dennis (the last name is illegible).

We conclude that these five checks--totaling $36,000 for 1993 and $1,503 for 1994--are not income to petitioner; however, we conclude that the remaining deposits into the Manila Accounts in 1992, 1993, and 1994 are petitioner's income.

B.    Nations Trust Account

Petitioner claims that $98,550 of the $100,000 deposit into the Nations trust account in 1993 is not unreported income.[7] Petitioner relies on his own self-serving testimony to support this conclusion.  Petitioner's testimony was questionable, vague, conclusory, and unsupported by the evidence in the record.  Under these circumstances, we are not required to, and do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations.  Lerch v. Commissioner, supra at 631-632; Tokarski v. Commissioner, 87 T.C. at 77.

Petitioner stipulated that the deposits into the Nations trust account in 1994 were income to him.  Petitioner also testified that he used his attorney trust accounts as personal accounts.

Petitioner originally claimed that the $100,000 deposit into the Nations trust account was a certificate of deposit belonging to a purported client of his named Charter Trading Corp., owned by William C. Comey.  After learning that the $100,000 deposit

---

[7]  Petitioner concedes that $1,450 of the $100,000 deposit is his income.

came from offshore, petitioner testified that he believed the deposit was from a purported client of his named James Scarborough for the promotion of a floating gambling boat on the Mississippi River. Petitioner later testified that this money came from an associate of Mr. Scarborough.

Petitioner presented no documentary evidence to support any of these claims. Neither Mr. Comey or Mr. Scarborough was called as a witness. We infer that their testimony would not have been favorable to petitioner. <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. at 1165.

Petitioner had dominion and control over the Nations trust account. Petitioner's name was on the Nations trust account. Petitioner had the power to make withdrawals out of the Nations trust account. His Social Security number and name were on the Nations trust account. Petitioner wrote 21 checks on the Nations trust account drawing on virtually all of the $100,000 deposit.

We conclude that the $100,000 deposit into the Nations trust account is petitioner's income.

II. <u>Section 6651(a)(1)</u>

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect. Rule 142(a); <u>United States v. Boyle</u>, 469

U.S. 241, 245 (1985).

Petitioner stipulated that he filed his 1992 return late and that he did not file returns for 1993 and 1994. Petitioner stated that he had no good excuse or compelling reason for not filing.

Petitioner offered no evidence showing that his failure to file timely was due to reasonable cause and not due to willful neglect. Accordingly, we hold that petitioner is liable for the addition to tax pursuant to section 6651(a)(1) for 1992, 1993, and 1994.

III. Section 6654

Section 6654 imposes an addition to tax for failure to pay estimated income tax. Petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect or that an exception applies. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner did not offer any evidence at trial related to this issue, and he failed to address it on brief. We conclude that petitioner is liable for an addition to tax pursuant to section 6654 for 1993 and 1994.

IV. Section 6662

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2)

due to negligence or disregard of rules or regulations. Sec. 6662(b). Whether applied because of a substantial understatement of tax or negligence or disregard of the rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner conceded he did not report $168,948 of taxable income in 1992. We have found that petitioner did not report an additional $229,055 of income for 1992. Petitioner's only argument is that he should not be penalized because he "was naive and stupid".

We conclude that petitioner is liable for a penalty pursuant to section 6662 for 1992.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.