T.C. Memo. 2018-103

UNITED STATES TAX COURT

MOHAMMAD NAJAFPIR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9660-16.                    Filed July 3, 2018.

Mohammad Najafpir, pro se.

Cameron W. Carr, Thomas R. Mackinson, and Joseph E. Nagy, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined deficiencies, additions to tax,
and penalties with respect to petitioner's 2009, 2010, and 2011 Federal income tax
as follows:

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(a) |
|------|-----------|-------------------------------|---------------------------------------|
| 2009 | $14,855 | $4,054.25 | $2,971.00 |
| 2010 | 12,646 | 3,161.50 | 2,529.50 |
| 2011 | 2,593 | --- | --- |

After concessions,[1] the issues for decision are whether petitioner: (1) received and failed to report gross receipts for tax years 2009 and 2010; (2) is entitled to a deduction for Schedule C home office expenses for tax years 2009, 2010, and 2011; (3) is liable for additions to tax pursuant to section 6651(a)(1) for tax years 2009 and 2010; and (4) is liable for section 6662(a) penalties for tax years 2009 and 2010.[2]

---

[1] Respondent conceded several expense deductions claimed on Schedule C, Profit or Loss From Business, totaling $1,166 and $2,838 for 2009 and 2010, respectively. Respondent also conceded that a 2010 bank deposit of $5,500 is nontaxable and that petitioner is entitled to self-employment tax deductions for the years at issue in amounts to be determined computationally.

Petitioner conceded Schedule C expense deductions totaling $8,533, $13,354, and $9,646 for 2009, 2010, and 2011, respectively. For 2009 petitioner also conceded unreported taxable interest of $132 and the earned income tax credit. Petitioner further conceded his liability for self-employment tax for the years at issue in amounts to be determined computationally.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                                                FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of settled issues, the stipulation of facts, and the attached exhibits are incorporated by this reference.  Petitioner resided in California when he filed his petition.

I.       Unreported Income

Petitioner owned AA+ Smog Check (AA+), a smog inspection station in Burlingame, California.  He established AA+ in 2007 as a sole proprietorship.  During the years at issue AA+ was a test-only smog check station; petitioner was legally restricted to performing smog inspections and other minor maintenance work, such as oil changes.  This additional maintenance work accounted for only 5% of AA+'s business.

The State of California uses a subcontractor, SGS Testcom, to issue smog test certificates and submit electronic smog test information to the State.  Petitioner must purchase smog test certificates from SGS Testcom in batches of 50, and the proceeds are remitted to the State of California.  SGS Testcom provides invoices and billing statements to its smog test station customers detailing how many smog checks were performed each month.

The State does not regulate the amount charged for smog checks; the inspecting facilities can set their own rates.  Petitioner charged between $29 and

[*4] $49. He did not have a general ledger or profit or loss statement for AA+. Petitioner determined AA+'s gross receipts using customer invoices, which he did not enter into evidence.

Petitioner had two active business checking accounts during 2009 and 2010, but he had no personal accounts. Petitioner used these accounts in connection with AA+'s business; he deposited AA+'s receipts into these accounts and used them to pay AA+'s expenses. In addition to these bank accounts, petitioner kept a cash hoard that was approximately $60,000 at the beginning of 2009. This hoard consisted of money petitioner had saved from the time he was 15, in addition to funds from the sale of his previous business. Petitioner kept his cash hoard because he was concerned about the banking crisis in 2008; in 2009, he redeposited his funds into his business account.

## II.   Home Office Expense Deduction

Petitioner lived in a one-bedroom apartment four doors down the street from AA+. His rent of $1,450 per month entitled him to the use of his apartment, as well as shared laundry facilities and one-half of a shared two-car garage that was attached to the apartment building. Petitioner did not park his car in the garage but instead used the space as business storage.

**[\*5]**   As an owner of a smog check business, petitioner is required by the State of California to keep certain invoices and records regarding smog checks for at least three years.  Invoices must be kept on location for purposes of immediate inspection.  AA+ had no formal office or storage space, and Burlingame area real estate was expensive.  Given the proximity and availability of petitioner's garage, he decided to use it as storage for his business records, including the State-mandated smog inspection invoices.  In addition to these business records, petitioner also stored business-related items such as backup air compressors, printers, monitors for the smog machine, and various parts such as oil filters and wipers.  He stored no personal items of note or value in the garage, save for some pencils and stationery.

III.    Tax Returns and Notices of Deficiency

Petitioner filed untimely Federal income tax returns for 2009 and 2010, reporting gross receipts of $102,809 and $124,706, respectively.  Petitioner filed a timely Federal income tax return for 2011.

Respondent issued notices of deficiency for 2009, 2010, and 2011 denying several Schedule C expense deductions and determining deficiencies attributable to unreported taxable interest and gross receipts.  Respondent also determined

[*6] additions to tax under section 6651(a)(1) and accuracy-related penalties under section 6662(a).

OPINION

I.    Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

II.    Unreported Income

In the Court of Appeals for the Ninth Circuit, to which an appeal of this case presumably would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), the presumption of correctness does not attach in cases involving unreported income unless the Commissioner first establishes an evidentiary foundation linking the taxpayer to the alleged income-producing

---

[3]  Sec. 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtit. A or B and meets other prerequisites, the Secretary shall have the burden of proof with respect to that issue.  Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).  However, petitioner has neither claimed nor shown that he satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent.  Accordingly, petitioner bears the burden of proof.  See Rule 142(a).

**[*7]** activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).  The requisite evidentiary foundation is minimal and need not include direct evidence.  See Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Banister v. Commissioner, T.C. Memo. 2008-201, aff'd, 418 F. App'x 637 (9th Cir. 2011).

Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer "to rebut the presumption of correctness of * * * [the Commissioner's] deficiency determination by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous."  Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989); see also Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g, T.C. Memo 1997-97.

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income.  Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  As petitioner failed to produce a general ledger or his business invoices, he did not produce adequate records for respondent to calculate his gross income.

Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any

**[*8]** method that clearly, in the Commissioner's opinion, reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. The reconstruction of income need only be reasonable in the light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The Commissioner is given latitude in determining which method of reconstruction to apply when a taxpayer fails to maintain records. Petzoldt v. Commissioner, 92 T.C. at 693.

Respondent employed the bank deposits method of proof to reconstruct petitioner's gross receipts from his smog inspection business. The acceptability of this method of proof is well established. DiLeo v. Commissioner, 96 T.C. at 867; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. at 656-657. When using the bank deposits method, the Commissioner is not required to show that each deposit or part thereof constitutes income, Gemma v. Commissioner, 46 T.C. 821, 833 (1966), or prove a likely source, Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Estate of Mason v. Commissioner, 64 T.C. at 657. Unless the nontaxable nature of deposits is established, gross income

[*9] includes deposits to bank accounts where the taxpayer has dominion and control of the funds. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Davis v. United States, 226 F.2d 331, 334-335 (6th Cir. 1955); Manzoli v. Commissioner, T.C. Memo. 1988-299, aff'd, 904 F.2d 101 (1st Cir. 1990).

Respondent performed two bank deposits analyses, in which he determined that petitioner's taxable income for 2009 and 2010 should be adjusted by $38,200 and $22,001, respectively.[4] By reconstructing petitioner's gross income using the bank deposits method and by demonstrating that petitioner used these bank accounts for his business, thus introducing evidence that petitioner was engaged in a trade or business and received unreported gross income from his business during the years at issue, respondent established the requisite minimal foundation linking petitioner with an income-producing activity. Therefore, petitioner bears the burden of proving that respondent's deficiency determinations are arbitrary or erroneous.

---

[4] Revenue Agent Goldie Yee performed the first bank deposits analysis. Ms. Yee has since retired, and Revenue Agent Sang Kim adopted the administrative file. Mr. Kim performed a second bank deposits analysis and computed petitioner's total income for 2009 and 2010. This second bank deposits analysis did not include as nontaxable a redeposit of $1,000; at trial, Mr. Kim testified as to this error.

**[\*10]** Petitioner disputes the results of respondent's bank deposits analyses, alleging that several of the deposits in issue are nontaxable. However, petitioner was able to identify only four bank deposits as nontaxable deposits from his cash hoard: $4,000 on June 11, 2009, $3,000 on September 14, 2009, $4,000 on September 24, 2009, and $3,200 on October 26, 2009.

We find petitioner's testimony regarding these deposits credible and rely on his testimony to resolve this issue. See Diaz v. Commissioner, 58 T.C. 560, 564 (1972) (observing that the process of distilling truth from the testimony of witnesses, whose demeanor and whose credibility we evaluate, "is the daily grist of judicial life"). We conclude that these four deposits in 2009, totaling $14,200, are not income to petitioner. See also Woodall v. Commissioner, T.C. Memo. 2002-318, 2002 Tax Ct. Memo LEXIS 337, at \*12 (finding specific deposits petitioner identified as nontaxable in bank deposit analysis were not income). However, petitioner has not provided any evidence showing that the remaining deposits respondent identified as income are nontaxable; therefore, we conclude that these remaining deposits for 2009 and 2010 are taxable income.

III.    Home Office Expense Deduction

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a);

[*11] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 280A(a) generally prohibits deductions for otherwise allowable expenses with respect to the use of an individual taxpayer's home. This prohibition, however, does not apply to space allocable within a "dwelling unit which is used on a regular basis as a storage unit for the inventory or product samples of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business."[5] Sec. 280A(c)(2).

Petitioner claimed home office expense deductions for the use of his garage for the years at issue. Petitioner argues that he is entitled to these deductions because the garage was used to store business records. Petitioner was required to maintain these records by the State of California, and his garage was the most convenient and inexpensive place to do so.

---

[5] The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit. Sec. 280A(f)(1)(A).

[*12] Petitioner does not fit within the exception of section 280A(c)(2), nor does he qualify for any other exceptions to section 280A(a).[6] Petitioner is not in the trade or business of selling products at retail or wholesale, and his business records and invoices do not constitute inventory. See Druker v. Commissioner, 77 T.C. 867, 874 (1981) (attorney denied deduction under 280A for home storage of legal files and books), aff'd in part, rev'd in part, 697 F.2d 46 (2d Cir. 1982); Banatwala v. Commissioner, T.C. Memo. 1992-483 (files and books related to petitioner's insurance business were not inventory for purposes of section 280A(c)(2)); Pearson v. Commissioner, T.C. Memo. 1982-295, 1982 Tax Ct. Memo LEXIS 453, at *8-*9 (dentist denied deduction under section 280A(c)(2) for home storage of patient records). Therefore, petitioner is not entitled to a deduction for his claimed home office expenses for the years at issue.

IV.    Additions to Tax

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(1) for failure to file timely returns for 2009 and 2010. Petitioner,

---

[6] Sec. 280A(c)(1) provides that an expense that is allocable to a portion of the taxpayer's dwelling that is used exclusively on a regular basis as the taxpayer's principal place of business will be allowed as a deduction. Sec. 280A(c)(1) does not apply in this case as petitioner's garage was not exclusively used as his principal place of business.

**[*13]** who concedes he filed his returns after they were due, argues that he is not liable because he acted with reasonable cause.[7]

Section 6651(a)(1) imposes an addition to tax for failure to file a return when due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The addition equals 5% of the amount required to be shown as tax on a return for each month that the return is late, not to exceed 25% in total. The Commissioner has the burden of production with respect to the liability of an individual for an addition to tax under section 6651(a)(1). See sec. 7491(c). The burden of showing reasonable cause under section 6651(a) remains on the taxpayer. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001). To show reasonable cause, the taxpayer must demonstrate that he exercised ordinary business care and prudence but nonetheless was unable to file his income tax return by the due date. See United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c), Proced. & Admin. Regs. Willful neglect is defined as a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245.

Respondent has met his burden because petitioner filed his 2009 and 2010 returns late. Petitioner, in turn, has not established that his failure to file timely

---

[7] While petitioner did not address his liability for the additions to tax in his petition, we find that this issue was tried by consent. See Rule 41(b).

[*14] returns was due to reasonable cause. We are not persuaded that petitioner's inability to find a reliable accountant in a timely manner rises to the level of reasonable cause. Accordingly, respondent's imposition of the addition to tax under section 6651(a)(1) is sustained.

## V.   Accuracy-Related Penalties

Finally, we address whether petitioner is liable for accuracy-related penalties. Respondent argues that petitioner is liable for accuracy-related penalties for tax years 2009 and 2010 under section 6662(a) and (b)(1) and (2) for underpayments due to either negligence or disregard of rules or regulations or substantial understatements of income tax. Petitioner argues that he is not liable because he acted with reasonable cause and in good faith.[8]

Pursuant to section 6662(a) and (b)(1), a taxpayer may be liable for a penalty of 20% on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. However, a taxpayer is not liable for the accuracy-related penalty under either provision to the extent there was reasonable cause for the underpayment and the taxpayer acted in good faith. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.

---

[8] Petitioner did not address his liability for the accuracy-related penalties in his petition, but we find that this issue was tried by consent. See Rule 41(b).

**[\*15]** The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence in determining the correctness of a return position that is contrary to a rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. Id. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Id.

The Commissioner has the burden of production with respect to the accuracy-related penalties. See sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalties. See Higbee v. Commissioner, 116 T.C. at 446. The Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b)(1).[9]

---

[9] Sec. 6751(b) requires written supervisory approval of the initial determination of certain penalties.

**[\*16]** <u>Graev v. Commissioner</u>, 149 T.C. __, __ (slip op. at 14) (Dec. 20, 2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016); <u>see also</u> <u>Chai v. Commissioner</u>, 851 F.3d 190, 222 (2d Cir. 2017) (citing <u>Higbee v. Commissioner</u>, 116 T.C. at 446), <u>aff'g in part, rev'g in part</u> T.C. Memo. 2015-42.

Respondent did not introduce into evidence written supervisory approval of the initial determination of the penalties before us.  Therefore, respondent has not satisfied his burden of production, and we reject his imposition of the section 6662(a) penalties for 2009 and 2010.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.